# Smith's Appeal.

1. Where the provision made for a wife in an ante-nuptial contract, is not so disproportioned to the husband's means, as to create a presumption of fraud and concealment; and there is no proof of fraud or concealment practiced upon the woman in the procurement of it, the contract will be sustained and enforced.

2. Neither the delivery of an ante-nuptial contract to the trustee therein named, nor the recording of it is essential to its validity.

January 28th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ., GREEN and CLARK, JJ., absent.

APPEAL from the Orphans' Court of *Philadelphia county* from the decree of said court in the adjudication of the executor's account in the estate of Stephen Smith, deceased: Of January Term, 1886, No. 431.

The following are the facts as they are stated by the auditing judge, ASHMAN, J.. in his opinion:

Stephen Smith died October 9th, 1884, leaving a will dated November 9th, 1878, and a codicil dated May 11th, 1881.

He left surviving him a widow, the appellant (by whom he had no children), and six children by a former wife.

By his will he gave his executors $15,000 in trust to invest and pay the income to his widow during her widowhood, the principal at her decease or marriage to be a part of his residuary estate.

At the audit of the executors' account, the widow elected to take against the will.

Her right to do so was contested upon the ground that in consideration of a certain interest conveyed to her by an ante-nuptial contract she had released all further claim in her husband's estate. The ante-nuptial contract was dated September 26th, 1867, about one month prior to her marriage to the testator. The testator, by this contract, granted to a trustee a property on Front street near Market street, Philadelphia, in trust to permit the widow, after the testator's death, to receive the rents during her life; and she, after releasing her thirds,

covenanted that the testator should have the right to convey all the rest of his estate without her becoming a party to the deed or deeds of conveyance.

The contract was never recorded by the testator nor delivered to the trustee, and was found among his papers by his legal representatives.

After his marriage to the appellant he conveyed some of his real estate and she joined with him in the deed for the same.

The property set aside under the ante-nuptial contract for her use was assessed for the purpose of taxation at the sum of $12,500; and at the time of the testator's death was in a dilapidated condition, and it would have required at least $2,000 to put it in ordinary repair.

The testator left real estate valued at $56,500, and personal estate for distribution valued at $334,543.83.

The accountants put in evidence book entries of the testator, which they claimed showed that he was possessed in 1867 of personal estate valued at $129,000 and real estate valued at $50,000; and to the admission of these book entries appellant excepted.

It was admitted that the testator was not in business after his marriage.

The appellant contended that the ante-nuptial contract was never delivered or carried into effect, and that, if it was, the provision made for her was disproportionate to the amount of the testator's estate, and that the presumption was raised that fraud was practiced upon her by the testator when she signed the contract, and that the burden of showing the contrary was cast upon his legal representatives.

The auditing judge held that she was bound by the contract, and that her right of election was gone, filing *inter alia* the following opinion:

The decedent left surviving him his widow by a second marriage, Caroline Smith, and six children, all by his first marriage, viz.: Alfred, Alonzo, Angelia, Stephen, Ellwood, and Horace F. Smith; all being of full age.

The widow elected to take against the will. Her right to do so was contested upon the ground that in consideration of a certain interest conveyed to her by an ante-nuptial settlement, she had released all further claim to the estate of her husband. The contract was dated September 26th, 1867, about one month before her marriage to the testator. The testator, by this agreement, granted to a trustee a warehouse property on Front street near Market street, in trust to permit the said Caroline, after testator's death, to receive the rents during her life; and the said Caroline, after releasing her thirds, covenanted that the testator should have the right to

convey all the rest of his estate without her becoming a party to the deed or deeds of conveyance. The deed was not recorded until after the testator's death, and it was found among his papers by his legal representatives.

The question does not seem to be attended with difficulty. In the interest of the widow, it must be admitted that the parties to an ante-nuptial settlement stand in a relation which compels the exercise of the largest good faith, and excludes from their dealings the thought of any material concealment by either: Kline *v.* Kline, 7 P. F. S., 120. This doctrine has been so sedulously adhered to, that a provision made by the prospective husband, which was manifestly disproportioned to the value of his estate, has been held to raise a presumption that he has practiced such concealment: Bower's Appeal, 11 Nor., 265; Kline's Estate, 14 P. F. S., 122. The principle was invoked by the widow of Stephen Smith. She showed that the testator's real estate was valued at $56,500, or thereabouts, and that the inventory of his personal estate footed up $358,-493.10, with a net fund for distribution of $334,543.83. The property set apart for her use was assessed for taxation in the sum of $12,500, and has now a rental value of $1,200 per annum, out of which $231.25 must be deducted for taxes. She also showed that this property is in bad order, and that when the testator last repaired it, he declared that he did so only to keep it in tenantable condition during his own life. He did not record the deed of settlement, nor deliver it to the trustee; but kept it among his own papers. These circumstances, it was claimed, were sufficiently indicative of bad faith to cast upon his legal representatives the burden of showing the contrary.

In answer to this, the solemn admission of the widow, that the testator had apprised her of the value of his estate, which appeared in the deed, may be used in two ways; it either throws upon her the burden of showing that she had been deceived; or if the *onus* is with the accountants, it is affirmative proof in their hands that she was not deceived. The language of her covenant is: " The said Caroline Reimer, after full consideration, and with full knowledge of all the other estate of the said Stephen Smith, in consideration of said intended marriage, and of the provisions of this deed, and for other good and valuable consideration her thereunto moving, doth," etc. The law presumes that she understood the force of these expressions when she used them over her signature. But the case does not rest upon her admissions. When the contract was executed, the present widow was forty-three years of age, without property, and earning her livelihood as an assistant in her brother's photograph establishment. The testator was

fifty-two years old, with a family of six children. His estate ·was then worth, as shown by his books, $129,396.16, and the property which he assigned to his wife yields now, at a time of low rentals, nearly $1,000 a year net. It is wholly outside of the question, that the estate has enormously enhanced in value since the marriage contract because the possibility both of its increase and diminution was a problem which was mutually waived by the parties. The only flaw in the testator's case is his failure to record the deed. He certainly did not intend to destroy it, because it was found as carefully preserved as his own deeds. He did not convey the property, although the deed of settlement empowered him to convey it, without his wife's joinder, but subject to the trust. Hence, the widow has suffered no injury from his omission. But the testator did not stand upon the legal provision which he had made for his wife; he supplemented it by a testamentary gift of the income of $15,000 for her life. Grouping these circumstances together, the auditing judge feels bound to decree that the widow's right of election is gone. If authority were needed to show that the consideration was adequate, and that it was not affected by the after-acquisition of property by the husband, he would cite Ludwig's Appeal, 5 Out., 535, and Rahe *v.* Bank, 15 Nor., 128.

And now, December 23d, 1885, the account, subject to the payment of clerk's costs, is confirmed *nisi.*

The widow filed exceptions to the adjudication, which after argument were dismissed and the adjudication confirmed.

She thereupon took this appeal and assigned the adjudication of the court for error.

*L. R. Fletcher* (*George Robinson* with him), for appellant.

The intention was to give the wife, in consideration of her releasing all interest that she might have in her intended husband's estate, a certain interest of which she by no means could be deprived; to secure it to her beyond peradventure. The husband did not carry out this intention, and his representatives now ask to enforce the contract against the wife.

He so treated the contract that the wife was subject to the danger of loss to some extent during the whole coverture.

Marriage articles which may affect the title to land should be ·recorded: Foster *v.* Whitehill, 2 Yeates, 259.

The contract not being recorded, it was possible for the husband to defeat the wife in the provision made for her. He could have mortgaged the property or even sold it, and in the case of sale she would have been entitled only to her thirds after his death: Wilson *v.* McCullough, 11 Harris, 440.

It may be true that if the contract was delivered she could

have enforced performance and could now receive the full amount to which she is entitled under the contract, but as the husband did not perform his part of the contract as it was intended, and she has been exposed to the risk which the contract was framed to avoid, is it not for her to elect whether or not she will now accept performance?

. Presuming, however, the contract to have been in force, was the provision made for the wife proportionate to the amount of the estate?

If the provision for the wife be disproportionate to the means of the husband, it raises the presumption of designed concealment, and throws on him and his representatives the burden of proof: Kline's Estate, 14 P. F. Smith, 122.

The husband left real estate valued at $56,500, and personal estate for distribution amounting to $334,543.83.

· The court below found that at the time of the execution of the contract the husband was worth in personalty $129,000, and in realty $50,000.

The only evidence of his worth at that time were book accounts, which the accountants offered, and from which they. asked the court to infer that he possessed the amount afterwards found by the court, but it did not appear from these accounts that he did not possess more than was set forth in them or that they showed all that he possessed.

The admission of these accounts was excepted to.

The husband was in no business after the marriage, and the large amount of his estate at the time of his death can hardly be supposed to be the estate which appears from the book accounts, with the ordinary increase.

· But upon the basis of the finding of the court the provision for the wife is undoubtedly disproportionate to the husband's means.

*George L. Crawford* (*George M. Dallas, H. Clay Haines*, and *Bowers Gormley & Snare* with him), for appellees.—It is the marriage, which consideration she has received, and not the fortune which supports and upholds an ante-nuptial settlement, marriage being the highest consideration: Nevin *v.* Prouse, 6 Ves., 752; Ford *v.* Stuart, 15 Beav., 499; Peachey on Marriage Settlements, 56; Magniac *v.* Thompson, 7 Peters, 393–4; to place beyond question that she was not deceived as to his estate, and that she deemed that pecuniary provision reasonable under all the circumstances, she declared in writing, in the contract, and acknowledged it before the magistrate, that she made it with full knowledge of all his other estate, and after full consideration. On the faith of the contract he married her.

Delivery may be either actual, by doing something and say-

ing nothing, or else verbal, by saying something and doing nothing, or by both: 1 Shep. Touch., 578; Dayton *v.* Newman, 7 Harris, 199; Arrison *v.* Harmstead, 2 Barr, 193; Penna. Co. *v.* Dovey, 14 P. F. S., 267.

In this state there is no statutory requirement for recording articles of marriage settlement, except that so far as they relate to interest in land, they fall under the general recording acts, and if not recorded are good, except as against *bona fide* purchasers for value without notice, and this is the whole effect of the cases of Foster *v.* Whitehall, 2 Y., 259, and Wilson *v.* McCullough, 11 H., 440. The feelings of most people are adverse to spreading the private affairs of marriage arrangements upon the public record. And of course, when he subsequently made the conveyance of a part of his realty to a purchaser, either the marriage settlement had to be recorded, or she to unite in the deed, which latter was the simpler and more desirable way.

Any provision which an adult before marriage agrees to accept is sufficient. If of competent age she may bargain away her rights under a marriage contract, as her husband could have done: Bishop on Married Women, section 422; Schouler H. & W., section 360; Domestic Relations, section 183. Having received the highest consideration of marriage, she cannot after his death restore the consideration.

Mr. Justice PAXSON delivered the opinion of the court February 28th, 1887.

We see no reason why the appellant should not be held to her ante-nuptial contract. It is true she has repented of her bargain. This, however, is not sufficient in the absence of proof of fraud or concealment practiced upon her in the procurement of said contract. While her husband was a much richer man at the time of his death than when the contract was made, yet this fact does not enter into the question of its validity. He left her by his will the income of $15,000 for her life, which was over and above what he was bound to do by the contract.

We cannot say that the provision made for her was so disproportioned to his means as to create a presumption of fraud or concealment. She was a second wife, past middle age, and her husband had a large family of children living. She was not the mother of his children, nor had she aided him in the accumulation of his fortune. Situated as the appellant was at this time she probably thought that a provision of about $1200 a year after her husband's death was reasonable. At any rate she agreed to it and having enjoyed the benefits of the contract she cannot now repudiate it for no better reason than that she

[Pittsburgh, Virginia & Charleston Railway Co. *v.* Vance.]

would like to have more. She nowhere alleges that she was deceived; on the contrary she declared over her hand and seal in the contract itself that she entered into it, "after full consideration, and with full knowledge of all the other estate of the said Stephen Smith."

The deed was not recorded and was found in Stephen Smith's possession after his death. From this it was argued that there was no delivery. We are unable to see the force of this. He was the proper custodian of the paper as he was the party alone interested in its preservation. It would have been an act of folly to have given it to his wife; for her interests would have been promoted by its destruction. It was not recorded. It was not essential to deliver it to the trustee; the latter had no duties to perform during Stephen Smith's life. Nor was recording essential to its validity. The appellant has no case.

> The decree is affirmed and the appeal dismissed at the costs of the appellant.