CASE 96.—SUIT BY THE CENTRAL TRUST CO. AGAINST
        KATE SETTLES, ALEXANDER SETTLES AND
        OTHERS.—December 10.

# Settles v. Settles

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

From a judgment in favor of Alexander Settles
and others, defendant Kate Settles appeals — Affirmed.

1. Husband and Wife — Antenuptial Contract — Validity.—On an
   issue whether a wife was misled and deceived by her
   husband as to an antenuptial contract, evidence held insufficient to show such to have been the case.
2. Same.—The intended marriage was a sufficient consideration
   to support an antenuptial contract, whereby the wife relinquished all right to dower and to share in the husband's
   personal estate and the husband relinquished any interest in
   the wife's estate.

LAVEGA CLEMENTS and WILFORD CARRICO for appellant.

SWEENEY, ELLIS & SWEENEY for appellees.

(No briefs—record out of clerk's office.)

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Louis Settles died in Daviess county intestate. He
was then residing on his farm, about two miles from
the city of Owensboro, and was survived by his wife,
the appellant, Kate Settles, and four adult sons by

a former marriage, viz., the appellee Alexander
Settles, Ambrose Settles, and William Settles, who
are his only heirs at law. The intestate owned at
the time of his death the farm mentioned, consisting
of 150 acres, worth from $15,000 to $20,000, and per-
sonal property to the amount of $5,000. The appel-
lee Central Trust Company, of Owensboro, duly
qualified as administrator of his estate, and there-
after brought suit in the court below to obtain .a
proper settlement thereof, making the widow and
heirs at law defendants. The supposed necessity for
suit was the existence of an antenuptial contract be-
tween the intestate and his wife, which it was alleged
the latter was attempting to repudiate in order to
compel the administrator to account to her out of the
intestate's estate for the value of the articles of
property exempted by the statute and directed to be
set apart to the widow of an intestate husband and
for onehalf of his surplus personal estate; it being
further alleged that the widow had demanded of it
as administrator such exempt property and one-half
of the surplus personalty, and was threatening to
bring an action therefor. The widow filed an answer
to the petition, which was made a counterclaim as to
the administrator and cross-petition against the heirs
at law, in which she in substance set up the facts that
she was 34 years of age, a widow, and the mother of
two children at the time of her marriage to the
intestate, Louis Settles, who was then 68 years of
age; that she was an uneducated woman, ignorant of
business transactions, and unacquainted with the
value of his estate; that four days before her marri-
age with the intestate he caused the marriage con-
tract referred to to be written by a lawyer; and that
two days before their marriage she and the intestate

signed and acknowledged it before the clerk of the Washington county court, in whose office it was duly recorded. The pleading in question contains the further averments that the property, real and personal, of which the intestate died seised, was worth from $20,000 to $25,000, and that $2,000, the amount the antenuptial contract provided should be paid her, in case she survived the intestate, and to her two children if her death occurred before that of the intestate, was inadequate, unreasonable, and disproportionate, and therefore she asked to be allowed to renounce the marriage contract, that it be set aside by the court, and she be adjudged entitled to receive of the intestate's estate such share as the statute gives the widow of an intestate husband at his death. By an amendment to her answer and cross-petition appellant alleged that she did not understand the marriage contract when she executed it; that she neither consulted any one, nor was advised about it, but "relied solely upon the said Louis Settles, who, she says, misled and deceived her, but for which she would not have executed said contract." The heirs at law filed answers to the cross-petition and amendment, controverting their averments. After the taking of depositions the case was submitted for trial and judgment to Hon. Malcolm Yeaman, of the Henderson bar, as special judge; the regular judge of the Daviess circuit court having, for reasons satisfactory to himself and the parties, declined to preside. Upon the hearing the special judge rendered judgment declaring the appellant, Kate Settles, not entitled to the relief sought, and dismissed her action; and she, being dissatisfied with the judgment, has appealed.

Waiving all questions raised by appellees as to the

insufficiency of the answer and cross-petition as amended, with the mere expression of opinion that it stated a cause of action which, if supported by evidence, would have entitled appellant to the relief asked, we will proceed to a consideration of the case upon its merits. While the antenuptial contract made by appellant with her deceased husband is not assailed upon the ground of fraud, she insists that she did not understand it when executed, and that she was misled and deceived by her husband, and thereby induced to execute it. It remains to be seen whether this charge receives any support from the evidence. What were the facts? There can be no doubt from the evidence that appellant had a previous acquaintance of several years' standing with her husband when she married him. A sister of hers was the wife of his brother, and she had more than once visited and spent some time with her sister, who lived in Daviess county and in the neighborhood of the decedent. At such times appellant frequently met him and had opportunities for ascertaining what property he had and its value. According to the evidence he repeatedly visited her at her home in Washington county for about a year before the marriage. It does not appear from the evidence that he was a reticent man as to his business affairs, and from her previous acquaintance with him and obvious knowledge of the purpose of his visits to her it is improbable that she should have failed to acquire some information as to the quantity and value of his estate, for the means of her doing so were manifestly at hand. It is further improbable that a young woman and mother of two young children, such as she was, however great her needs, should have embarked in a matrimonial venture with a man of his

age—just twice that of her own—without knowing in advance what provision he would be willing to make for her and her children. The marriage must have been largely one of convenience, and such marriages are not usually effected without some consideration of property acquisition or other practical benefit. Whatever may have been appellant's motive for entering into the marriage—and we do not mean to intimate that she acted from an improper motive—the evidence does not show that she was without means of learning all that she could have desired to know about the financial worth of the man she married.

It is a significant circumstance that no witness introduced by her testified to any act or declaration of the deceased husband that indicated any effort on his part to conceal from appellant's knowledge what property he had or its value; and there was no proof whatever of his making any representation that was untrue, or holding out any improper inducement to her to enter into or execute the marriage contract. On the contrary, there was much testimony conducing to prove that appellant's mother and brother were consulted by the decedent on the subject of his marriage to her. Indeed, the mother and brother, with whom appellant and her two children were then living, in Washington county both testified that the intestate, two days before the marriage, and before the antenuptial contract was signed or acknowledged, asked their consent to his marriage with appellant, although such consent was not legally necessary, and also requested each of them to read the contract in question, which he handed them for that purpose, accompanying the act with a statement as to its provision for the benefit of appellant's children in

the event she did not survive him. It is true the
mother said that they declined to read the contract,
evidently because they thought appellant capable of
entering into such a contract without their advice or
assistance; but in any event it is patent that, in thus
conferring with them with respect to the contract and
asking them to read it, the intestate, instead of being
guilty of any concealment with reference to his estate,
or his intentions with respect to his future wife, was
acting in good faith, and desirous, not only that ap-
pellant, but that her entire family, should know the
full nature of the antenuptial contract, and what its
provisions were with respect to appellant and her
children. In addition, when he offered to show the
contract to the mother and brother of appellant, he
went to them, as the mother testified, from the
presence of appellant. It is but fair to presume,
therefore, that his purpose to explain the meaning of
the contract to the mother and brother, and to allow
them to read it, was with appellant's knowledge, or
at her request. Moreover, it is further to be pre-
sumed that, when she went with the intestate to the
office of the clerk of the Washington county court,
that officer, before taking her acknowledgment to the
contract, explained its meaning and effect to her. In
brief, there was nothing attending the intestate's
courtship of appellant, or the circumstances sur-
rounding the execution of the antenuptial contract,
or the marriage, that indicated any concealment upon
his part as to the nature or value of his estate, or any
intention to mislead or deceive the appellant. There
was certainly no undue haste in the execution of the
contract, and there was ample time afforded appel-
lant to have objected to or withdraw from the con-
tract between the date of its execution and her mar-

riage with the intestate. There is an entire omis sion from the record of any evidence tending to show either concealment, deception, or fraud upon the part of the intestate in the procurement of the antenuptial contract. The provision made for appel lant by the contract might with some show of rea son have been deemed inadequate, but for the further provision for the benefit of her infant children; and, while the beneficial interest given the children was contingent upon the occurrence of their mother's death before that of the intestate, it was nevertheless an interest of which she could not have deprived them, by repudiating or procuring the cancellation of the contract before the intestate's death. There- fore, she was estopped to do so after his death. In the light of the facts and circumstances the execution of the antenuptial contract and the subsequent inter- marriage of appellant and the intestate, it cannot be said that the provision made for her was so grossly inadequate as to have resulted from concealment, duress, deception, or fraud on the intestate's part in obtaining appellant's acceptance thereof.

There was no evidence that tended to show that appellant was incapable of understanding the con- tract; and, this being true and appellant being of full age, it must be taken for granted that she possessed the necessary capacity to understand the contract and was in every way qualified to enter into it. From the execution of the ante-nuptial contract down to the death of her husband appellant was never heard to complain of or object to its provisions. She was evi- dently satisfied with it until after his death, and as a circumstance tending to show that she was not unin- formed at the time of executing the contract as to the quantity and value of his estate she told the witness

Amanda Settles, some time after her marriage with
the intestate, that "he didn't have the money every-
body thought he had." It is hardly probable that she
would have made such a remark unless she had taken
pains to inform herself before the marriage of what
estate he owned, and had afterwards discovered that
it was not as valuable as she had supposed before
marriage. In other words, this remark would seem
to indicate that he did not own as much property as
she then believed he possessed. The contract in the
instant case is not so unusual in its terms as to ren-
der it per se inequitable. By it the appellant relin
quished all right to dower and to share in the distribu.
tion of her intended husband's personal estate, and
the husband any interest that he might have claimed
as survivor in whatever estate the wife may have
owned at the time of the marriage or at her death.
In addition, it provided for payment to her at the
husband's death of $2,000 out of his estate, and
further provided that, if she died before the husband,
this $2,000 should be paid to her two children by a
former husband. The latter provision shows the
intestate's appreciation of appellant's solicitude for
her children, and indicated a desire on his part to
have her feel that, in the event her death should occur
before his, her offspring would not be left wholly
unprovided for, although they had no claim upon his
bounty.

We are not aware that this court has ever con-
demned an ante-nuptial contract made under such
circumstances as attended the execution of this one.
On the contrary, it has in several instances sustained
such contracts made under similar circumstances,
upon the ground that the intended marriage alone, in
the absence of fraud, concealment, or duress, was a

sufficient consideration to uphold it, Forwood v. Forwood, 86 Ky. 114, 5 S. W. 361, 9 Ky. Law Rep. 415; Crostwaight v. Hutchison, 2 Bibb 408, 5 Am. Dec. 619; Mitchell's Admr. v. Mitchell, 4 B. Mon. 380, 41 Am. Dec. 237; Bishop on Married Women, vol. 1, section 775. Upon the whole case we are satisfied that the conclusion reached by the learned and conscientious special judge who decided this case is correct.

The judgment is therefore affirmed.