### SUHOR et al. v. GOOCH.

(Circuit Court of Appeals, Fourth Circuit. July 6, 1917.)

#### No. 1514.

1. HUSBAND AND WIFE ⬤⟹34—ANTENUPTIAL SETTLEMENT—FRAUD—CONCEALING CONTENTS—EVIDENCE.

That the man procured the woman's signature to the antenuptial settlement contract without her knowledge of its contents, claimed as ground of fraud for setting it aside, *held* disproved by the positive evidence, opposed only by statement of the woman's mother that, so far as she knew, her daughter had not seen the paper.

2. HUSBAND AND WIFE ⬤⟹31(2)—ANTENUPTIAL CONTRACT—MERGER OF NEGOTIATIONS.

In an antenuptial settlement contract executed with knowledge of its contents were merged all promises and negotiations for settlement of a greater amount.

3. HUSBAND AND WIFE ⬤⟹34—ANTENUPTIAL SETTLEMENT—RELEASE OF WIFE'S INTEREST—GROSS DISPROPORTION—PRESUMPTION.

There is no such gross disproportion between an antenuptial settlement for $50,000, with relinquishment by the woman of her interest as wife in the man's estate, and her expectancy, he being then worth $200,000 in personalty and $40,000 in realty, as to raise presumption of his concealment or failure to disclose the value of his property.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. HUSBAND AND WIFE ☞33—ANTENUPTIAL SETTLEMENT—EFFECT OF SUI-
CIDE.

Suicide of husband is not a fraud on the wife invalidating their ante-
nuptial settlement.

Appeal from the District Court of the United States for the Eastern
District of Virginia, at Richmond; Jeter C. Pritchard, Judge.

Suit by Margaret Corwin Radcliffe Gooch against Annie Wayne
Suhor and others. Decree for plaintiff, and defendants appeal. Re-
versed.

S. S. P. Patteson and H. M. Smith, Jr., both of Richmond, Va.
(Robert E. Henley, of Richmond, Va., on the brief), for appellants.

Edward P. Buford, of Lawrenceville, Va. (Marshall R. Peterson,
of Lawrenceville, Va., C. T. Baskervill, of Boydton, Va., and S. E.
Williams, of Lexington, N. C., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and SMITH, Dis-
trict Judge.

WOODS, Circuit Judge. W. H. Gooch and Margaret C. Radcliffe
were married on October 14, 1915, at Lexington, N. C. Immediately
before the marriage an antenuptial contract was executed by which
Gooch promised in consideration of marriage that he would pay or
cause or provide to be paid one year after his death to the Old Do-
minion Trust Company $50,000 in trust to pay the interest to his wife,
Margaret, for her life or widowhood, and upon her death or second
marriage to pay the principal as directed by his will, and upon failure
of testamentary disposition to his children and their issue. Miss Rad-
cliffe, in consideration of marriage and the provision for her above
set out, agreed to accept from Gooch's executor, administrator, or
heirs the settlement in lieu of her dower rights and all other rights in
Gooch's estate, real and personal. On the same day husband and wife
left on a trip to California. On this trip, one month after the mar-
riage, Gooch was found in their apartment on a railroad train in Texas
dead from a pistol shot supposed to have been self-inflicted. He left
no will, and the only persons interested in his estate are his widow
and his daughter, Annie W. Suhor, and her husband, George Suhor.
Pending a controversy in the state courts as to the right of adminis-
tration, the Old Dominion Trust Company was appointed curator of
the estate. On January 24, 1916, the widow instituted this suit against
Mrs. Suhor and her husband and the Old Dominion Trust Company
to have the antenuptial contract annulled on the ground that Gooch
obtained her signature to it by imposition and fraud. The District
Court in a formal decree held that the allegations of the bill were sus-
tained by the evidence, and set aside the settlement as fraudulent.

Three specifications of fraud are relied upon by Mrs. Gooch:

First. Imposition by Gooch in procuring her signature to the doc-
ument without informing her of its meaning, and in violation of his
promise previously made to settle on her a home worth $10,000 to
$12,000 and an income of $3,000 to $4,000 a year.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Second. Concealment by Gooch of the value of his property while taking a relinquishment of his intended wife's interest in it for the consideration of a settlement grossly disproportionate to the value of the share of his estate she would have received on his death but for the settlement.

Third. Suicide immediately after marriage by which he fraudulently cut off her prospects of enjoying his estate and receiving gifts from him.

Because of the death of Gooch and the consequent incompetency of his widow to testify in the cause, the record consists chiefly of the evidence of Mrs. Radcliffe, the mother of Mrs. Gooch, and their correspondence with Gooch. This correspondence, taken with the other evidence, reveals the characters and attitude of the parties to it. Gooch was an illiterate man of natural force, about 50 years old, who had accumulated about $240,000. He had been divorced from his first wife, on whom he had made a settlement of the interest on $36,000 for her life. Afterwards he had association with a woman named Beulah Dickerson, who had given birth to a child and imputed to him its paternity. He was fond of his daughter, Mrs. Suhor, and had made to her numerous valuable gifts. After his engagement to Miss Radcliffe he gave her generously jewels and other articles and $570 in money. He was petulant, suspicious, jealous, and capricious, and these characteristics, according to Mrs. Radcliffe, were made known to her and her daughter openly and very disagreeably after the engagement. The engagement began in 1913, was broken in July, 1914, and renewed in July, 1915. After the renewal Gooch wrote a letter which Mrs. Radcliffe and her daughter considered highly insulting. He several times postponed the marriage, and entered into it with reluctance on the day last fixed only after Mrs. Radcliffe had insisted that the marriage should take place at the time appointed or not at all. No invitations were issued for fear Gooch would be unwilling to marry at the time appointed. One probable cause of this reluctance was anxiety over his former relations with Miss Dickerson and apprehension from threats of personal violence made by her. But the correspondence shows that another cause was his doubt of a happy result. Great as were his faults and sins, his acts of generosity go far to repel the suggestion that he would contrive a scheme to defraud the woman from whose companionship he hoped to derive happiness.

Miss Margaret Radcliffe was an educated teacher of music, 24 years of age at the time of her marriage. She was of social standing far above Gooch, and apparently had little, if anything, in common with him. Her mother, also an educated teacher, was her companion and intimate adviser in the affair. The letters of Gooch to Mrs. Radcliffe and Margaret, their letters to him, and the personal associations described by Mrs. Radcliffe indicate an engagement of bickerings and disagreements. Mother and daughter knew of his divorce and of his fear of Miss Dickerson, though apparently not of any sexual relations he may have had with her. The affair with Miss Dickerson they treated as the subject of merriment and contempt, rather than of objection, or of sympathy for Gooch's distress over it. Gooch's

record, his truculent conduct, his business as a liquor dealer, his illiteracy, his reluctance to marry, the difference in age, tastes, and association, and the constant bickerings almost to the day of the marriage produce the conviction, which Miss Radcliffe's declarations of affection in letters to Gooch do not remove, that the marriage was one of convenience with a large factor of mercenary consideration rather than of sentimental attachment.

[1, 2] In the light thus furnished by the personality of Gooch and Mrs. Gooch and her mother and their course of conduct, we consider the charges of fraud. The evidence, direct and circumstantial, affirmatively disproves the first charge that Gooch procured the complainant's signature to the contract without informing her of its meaning and in violation of an agreement to make a larger settlement. Gooch made known to both mother and daughter his desire and intention to make a marriage settlement, and discussed it with them in conversation and in correspondence more than a month before the marriage. He employed Mr. Patteson, an attorney of high character, to prepare it. It was prepared by Mr. Patteson and sent to Gooch some time before the marriage, and returned with the spelling of the middle name of Miss Radcliffe changed in such way as to indicate that the correction had been made by her or at her instance. It is true that the contract was executed hastily before the marriage because Gooch had been detained as a witness in Richmond so that he could not go to Lexington the day before as he had intended. But he took Mr. Patteson with him to see to its proper execution, having the best of reasons to believe that his presence would insure fairness. Mr. Patteson's direct and undenied evidence was that he told Miss Radcliffe she should understand it before executing it, and that she turned the leaves and said she had seen a copy of it and knew all about it. She must have referred to the copy sent to Gooch by Mr. Patteson, for there was no other that she could have seen. This shows knowledge by the complainant of the instrument and fair dealing with her. Against this the plaintiff offered nothing except the negative statement of Mrs. Radcliffe that, so far as she knew, her daughter had not seen the paper. The conclusion, which this proof requires, that Gooch had shown Miss Radcliffe a copy of the contract, and that she knew its import, disposes of the averment that he had before promised to settle on her a home worth $10,000 to $12,000 and an income of $3,000 to $4,000 a year; for any past promises or negotiations were merged in the instrument actually executed. Besides, it is made evident that Gooch was speaking of the home and income in a general indefinite way, and that his purpose was indefinite, by the statement attributed to him in the same connection that he had given his daughter, Annie, about $5,000, and that "I have told Annie I wanted to fix Margaret in the same way I had fixed her." He clearly indicated to Mrs. Radcliffe in conversation that he intended to make what he regarded a proper marriage settlement and give Margaret, as he had given Annie, some trips abroad. He made it very plain to Mrs. Radcliffe that he would determine later according to his own discretion whether they should have anything more. All this shows that the complainant knew the terms of the marriage settlement, and that she

understood that it gave her all she was to expect or claim as a legal right.

[3] The next charge against Gooch is fraud in taking a relinquishment from Miss Radcliffe of her interest as a wife in his estate without making a full disclosure of the value of his property. The principles of law relating to the validity of marriage contracts are well settled, but their application depends on the facts of each case. Such settlements are favored as promoting providence and domestic happiness, especially where the husband has other claims upon his bounty; but the parties are not charged with the diligence in protecting their rights required of those who contract at arm's length. On the contrary, they stand in a relation of the highest trust and confidence which demands the utmost good faith from one to the other. Hence, while good faith is presumed, as in all other contracts, the courts will closely scrutinize marriage settlements to discover material concealment or even failure to disclose material facts. Concealment or failure to give full information as to the items or value of the property of the party making the settlement may be shown to be prejudicial to the other party, either by direct extraneous evidence or by the character and consideration of the contract itself. So a relinquishment by a wife of her rights of dower and inheritance in her husband's property for a provision grossly disproportionate to the value of her reasonable expectancy from her husband's estate is itself sufficient to overcome the ordinary presumption of good faith, and cast upon the husband the burden of showing that there was a fair disclosure of the value of his property. To have this effect, however, the disproportion must be so gross as to lead the court to infer that, if it had been fully understood, the woman would not have voluntarily executed the contract. What is gross disproportion depends upon all the circumstances appearing at the time of the making of the contract. It is not to be inferred from the mere fact that the settlement is considerably less than it turned out the wife would have got but for the settlement, any more than gross excess is to be inferred from the fact that the settlement gave considerably more than it turned out the wife would have got but for the settlement. If that were the test, settlements would be of little, if any, value. Their purpose is to provide a certainty against a future uncertainty which may be greater or less. Bibelhausen v. Bibelhausen, 159 Wis. 365, 150 N. W. 516; Gaines v. Gaines, 163 Ky. 260, 173 S. W. 774; Robinson's Estate, 222 Pa. 113, 70 Atl. 966, 128 Am. St. Rep. 794; 21 Cyc. 1250.

Without offering direct proof of concealment by her husband or his failure to inform her of the value of his property, Mrs. Gooch relies on the proposition that there was such gross disproportion between her expectancy in her husband's estate and the settlement made upon her as to cast upon Gooch's heir and personal representative the burden of proving full disclosure by Gooch of the value of his property, and that they have failed to make this proof. At the date of the contract the net value of Gooch's personal estate was about $200,000, and of his real estate about $40,000. If no marriage settlement had been made, the complainant, as his wife, would have had an expectancy of

one-third of his whole property, amounting to $70,000 to $80,000, on his death. The value of this expectancy is not to be estimated at the time of Gooch's untimely death, but at the date of the contract, when it was subject to the contingency of being reduced far below the value of the settlement by business misfortunes or by Gooch's bestowal of his property upon his daughter or other persons. While under the Virginia law he could not have cut off by will his wife's one-third interest in the estate which might be left at his death, the expectancy, except her dower rights of one-third for life in his real estate, was subject to the risk of any disposition that Gooch might have chosen to make in his lifetime, and also to the vicissitudes of business life. The complainant had not borne with him the sacrifice and labor of accumulation. Considering the disparity of age and education and association, the marriage was, at best, an experiment in the search for happiness. It was evident that he would continue to give liberally to his daughter; and it is probable he was under moral obligation to provide for Miss Dickerson and a natural child. The settlement, so far from being inadequate to the wife's comfortable support after her husband's death, was sufficient to raise her from dependence on her daily labor as a music teacher before her marriage to a position of comparative affluence. It would be going very far for this court to say that a reasonable woman with full knowledge of Gooch's property, if she looked at the matter even from a purely mercenary standpoint, and considered all the circumstances and prospects, would not have accepted a settlement which secured a comfortable support for her life or widowhood, in satisfaction of an expectancy with important elements of uncertainty. Still less admissible is the inference of disproportion between the settlement and the expectancy so gross as to raise the presumption of Gooch's concealment or failure to disclose the value of his property.

In all the cases we have examined, where such an inference was held to be warranted, the disproportion was far greater. For instance, in the case of In re Enyart's Appeal (Neb.) 160 N. W. 120, the husband was worth $225,000, and the settlement on the wife in full of all interests was equivalent to annual interest on $10,000 at 5 per cent. for 20 years. In Taylor v. Taylor, 144 Ill. 436, 33 N. E. 532, the settlement was $2,000 at death of husband out of an estate of $41,000. In Barker v. Barker, 126 Ala. 503, 28 South. 587, it was $500 out of an estate of $10,000 of a man 87 years old. In Slingerland v. Slingerland, 115 Minn. 270, 132 N. W. 326, the settlement provided for the payment of $5,000 out of an estate of $225,000; and the money was never paid. In Hessick v. Hessick, 169 Ill. 486, 48 N. E. 712, the settlement was $300 on death of husband out of an estate of about $40,000; and in Achilles v. Achilles, 151 Ill. 136, 37 N. E. 693, $200 a year for life or widowhood out of an estate of $20,000.

Contracts have been sustained in cases where the disproportion was far greater than in the present case. In Landes v. Landes, 268 Ill. 11, 108 N. E. 691, the settlement was $10,000 and the estate $130,000; in Settles v. Settles, 130 Ky. 797, 114 S. W. 303, $2,000 out of an estate of $20,000; in Smith's Appeal, 115 Pa. 319, 8 Atl. 582, $1,200 a

year for life out of an estate of $391,000; in Neely's Appeal, 124 Pa. 406, 16 Atl. 883, 10 Am. St. Rep. 594, $600 a year for life out of an estate of more than $30,000.

We conclude there is no such gross disproportion between the settlement on Mrs. Gooch and her expectancy as to warrant the presumption of constructive fraud by concealment or failure to disclose the value of the husband's property. Besides, against such an inference there is positive and unassailed proof of full disclosure. The contract itself recites that "the subject of their pecuniary condition, situation, their prospects and desires, their mutual rights and obligations," had been fully considered. Smith's Appeal, 115 Pa. 319, 8 Atl. 582. The statement attributed to Miss Radcliffe by Mr. Patteson that she had seen a copy of the contract and knew all about it standing uncontradicted, taken in connection with Gooch's reputation for wealth and his style of living, is also strong affirmative evidence that the plaintiff was informed as to the value of the property of her intended husband.

[4] The contention that Gooch committed a fraud on plaintiff's marital rights by his suicide is without foundation. No doubt, Mrs. Gooch signed the contract with a hope that Gooch's liberality and affection would lead him to do much more for her; and this hope would probably have been realized had Gooch lived to realize his own hope of domestic happiness. But so far from agreeing or even intimating either expressly or impliedly that he would make further provision for his wife, Gooch made it very plain in conversation with Mrs. Radcliffe that he would not commit himself to do anything more than the marriage settlement would provide. There is no reason, and we think no authority, for saying that a man driven by despair to take his own life by the mere act of suicide commits a legal fraud on the property rights of his wife.

To sum up, the preponderance of the evidence supports these inferences: There was no direct evidence of fraud or misrepresentation; the settlement was not so grossly disproportionate to the wife's expectancy when all the circumstances of the parties are considered as to raise the presumption of fraud; the settlement was adequate for a comfortable support for Mrs. Gooch after the death of her husband and during widowhood. She knew of its terms; and the recitation of the instrument itself in connection with Gooch's reputation for wealth shows that there was no concealment. Mrs. Gooch married in full acceptance of the terms of the settlement, taking the chances of further beneficence from her husband; and Gooch would not have contracted the marriage but for her acceptance, leaving his other property free for such disposition as he might choose to make. The suicide of Gooch was a misadventure not anticipated by either party, and therefore it could not be an act of fraud affecting the validity of the settlement. The mere hope of future beneficence unsupported by a promise was not a property right, and therefore the blasting of that hope by suicide could not be a fraud.

The point that the settlement cannot be carried out by Mrs. Suhor as the heir of her father is without merit, since the contract provides

that Mrs. Gooch would accept the money in performance of Gooch's undertaking from his personal representatives or heirs. Neves v. Scott, 9 How. 196, 13 L. Ed. 102.

Reversed.