HENRY HESSICK *et al.*

*v.*

MARGARET HESSICK.

*Opinion filed November 8, 1897—Rehearing denied December 7, 1897.*

1. CONTRACTS—*parties to ante-nuptial contract occupy a confidential relation toward each other.* One making an ante-nuptial contract with an intended wife stands in such a fiduciary relation toward her as imposes upon him the duty of making a full disclosure of the nature, character and amount of his property.

2. SAME—*when equity will annul ante-nuptial contract.* Where one making an ante-nuptial contract with an intended wife fails to disclose the full character and extent of his property, and the provision made for her therein is less than she would be entitled to by

virtue of her marriage, equity may annual the contract in a contest, after the husband's death, between his widow and his heirs.

3. EVIDENCE—*what raises presumption of designed concealment.* The fact that the provision made for an intended wife in an ante-nuptial contract is disproportionate to the means of the intended husband raises a presumption of concealment of his financial condition, and casts upon those claiming in his right, in a contest with her, the burden of proving full knowledge on her part of all facts materially affecting the contract.

4. SAME—*what not sufficient to prove full knowledge by wife when signing ante-nuptial contract.* Evidence that an intended wife, who could neither read, write nor understand English, resided near her intended husband, that he was reputed to be wealthy, and that she signed an ante-nuptial contract written in English after its interpretation to her, will not, of itself, establish the fact she signed the contract with knowledge of all material facts affecting it.

APPEAL from the Circuit Court of St. Clair county; the Hon. A. S. WILDERMAN, Judge, presiding.

HAMILL & BORDERS, for appellants.

WILLIAM WINKELMANN, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellants are the heirs-at-law of George M. Hessick, deceased, and as such seek by this action to partition certain real estate of which he died seized. Appellee, his widow, was made a party defendant, the bill setting up an alleged ante-nuptial agreement between her and the deceased in bar of all her rights and claims as widow in and to the estate, real and personal property, of said George M. Hessick, except the sum of $300 provided for in the agreement. Having answered the bill she filed a cross-bill, alleging that she signed the contract after her betrothal to Hessick, it having been previously drawn up by his attorneys, she having no information concerning the contents thereof, and being without knowledge, at the time, of the extent and value of the property possessed by him, and that she could not speak, read or write the English language. The prayer of the cross-bill

was that the contract be declared void and she allowed her dower and homestead in the real estate of which the husband died seized. Issue being joined on the question as to the validity of the ante-nuptial contract, it was found null and void. From that decree this appeal is prosecuted, the only question presented for our decision being, is the evidence in the record sufficient, under the law, to sustain the decree.

The contract is as follows:

"This agreement, made and entered into this twenty-second (22d) day of December, A. D. eighteen hundred and eighty-five (1885), between George M. Hessick, of the county of St. Clair, State of Illinois, party of the first part, and Margaret Deichmann, of the said county and State, party of the second part:

"*Witnesseth*, That whereas a marriage is about to be had and solemnized between the said parties, and whereas each of the said contracting parties is now the owner of real and personal property in his and her own individual right and each has chil-. dren by a former marriage, therefore it is mutually agreed and contracted by the said parties as follows:

"*First*—That after the consummation of said marriage, and during the continuance of said marriage relation, each of said contracting parties shall hold, possess, enjoy and dispose of the property now owned by him or her the same as if said marriage had never been consummated.

"*Second*—That all the property acquired by either of said parties during the existence of said marriage, whether acquired by purchase with his or her own means or by gift, devise, inheritance or otherwise, shall be likewise held, owned, enjoyed, controlled and disposed of the same as if said marriage had never been consummated.

"*Third*—That in case said marriage should be dissolved by divorce, then and in that event neither party shall be entitled to any part or portion of the property of the other, as alimony or otherwise.

"*Fourth*—That in case the party of the first part shall survive the party of the second part, then and in that event he shall not be entitled to any part or portion of her property, as dower or otherwise; but in case the party of the second part shall survive the party of the first part, then and in that event she shall be paid out of the estate of the party of the first part the sum of three hundred dollars ($300), which sum shall be re-

ceived by her in full satisfaction and discharge of her dower, homestead, widow's award, and all other claims of every name and nature whatsoever which she might and would otherwise have been entitled, as such widow, to claim in the property and estate of the said party of the first part.

"In witness whereof the said parties have hereunto set their hands and seals to this and one other instrument of the same date and tenor, this 22d day of December, 1885.

GEORGE M. HESSICK,          [Seal.]

MARGARET X DEICHMANN.          [Seal.]
mark.

Witness to mark—JAMES M. DILL."

"STATE OF ILLINOIS, }
 St. Clair County.   } ss.

I, M. W. Schaefer, a notary public in and for said county and State, do hereby certify that George M. Hessick and Margaret Deichmann appeared before me this day in person, and acknowledged that they signed, sealed and delivered said instrument as their free and voluntary act, for the uses and purposes therein set forth.

"Given under my hand and notarial seal this 22d day of December, A. D. 1885.          M. W. SCHAEFER, Notary Public."

There is no substantial conflict in the testimony, which is to the effect that on the day prior to the date of the agreement George M. Hessick went to the law office of Dill & Schaefer, in the city of Belleville, who were his attorneys, and directed them to write a marriage contract between himself and appellee, who was then Mrs. Deichmann, and in pursuance of such direction the agreement in question was prepared, in duplicate. On the date of its execution the parties went to the office together. The instrument was already prepared and seems to have been written in the absence of both parties, but the inference from the testimony of Dill, who drew it, must be that Hessick gave him directions as to its terms. Before it was signed it was read to Hessick in English, and then read and interpreted to appellee in German, whereupon she said it was all right and both parties signed it, each keeping a copy. There is no proof whatever as to whether

she knew the nature, character or value of his property.
As shown by the testimony, nothing was said on that sub-
ject.   Deceased was at the time the owner of real and
personal property of the value of $35,000 or $40,000.   She
owned but a nominal amount of personal property and
no real estate in fee, but had a homestead and dower
right in one hundred and twenty acres of land owned by
her deceased husband at his death.   The homestead she
had abandoned upon her marriage, and the dower is not
shown to be of any considerable value.

The decree below, as we gather from the argument,
was based on the theory that because of the inadequate
provision secured to the wife, in view of the husband's
estate, by the terms of the ante-nuptial agreement, it could
only be upheld upon proof that appellee executed it with
full knowledge of the property then owned by him, and
a reversal is here urged, first, upon the ground that the
court improperly cast the burthen as to that fact upon
appellants; and second, that even upon the court's view
of the law the testimony introduced by them was suffi-
cient to charge her with such knowledge.

On the first proposition the position of counsel is, that
under the law, it appearing that appellee fully under-
stood the provisions and effect of the contract and no
positive fraud or deception being shown upon the part
of the husband, it was not necessary to the validity of
the contract that the amount and character of his prop-
erty should have been disclosed to her before executing
the agreement.   This position is doubtless correct as a
general rule, but there is a well-defined exception to it
in the case of ante-nuptial agreements.   It has been held
by many courts that if the provision made for an espoused
wife is unreasonably small in proportion to the estate of
the intended husband, that fact alone will raise a pre-
sumption of a fraudulent concealment of the husband's
estate and invalidate the agreement at the instance of
the wife, unless it be shown by the husband, or those

claiming the benefit of his agreement, that she executed it with knowledge of the extent and value of his property. The reason of the rule is, that after the marriage engagement is entered into, the relationship between the parties is confidential, and the intended wife is supposed to confide in the man to whom she is betrothed, to deal fairly and justly with her. The doctrine can be no more clearly and positively stated than was done by the late Justice SCHOLFIELD in *Taylor* v. *Taylor*, 144 Ill. 436, as follows (p. 445): "Parties to an ante-nuptial contract occupy a confidential relation toward each other. (*Kline's Estate*, 64 Pa. St. 124; *Pierce* v. *Pierce*, 71 N. Y. 154; *Rockafeller* v. *Newcomb*, 57 id. 86.) While they may lawfully contract with each other where there is full knowledge of all that materially affects the contract, yet where the provision secured for the intended wife is disproportionate to the means of the intended husband it raises the presumption of designed concealment, and throws the burden upon those claiming in his right to prove that there was full knowledge on her part of all that materially affected the contract." And it was there held: "The burden here was, therefore, upon appellants to prove, by satisfactory evidence, that appellee had knowledge of the character and extent of her intended husband's property and of the provisions and effect of this instrument, or, at all events, that the circumstances were such that she reasonably ought to have had such knowledge at the time this instrument was executed." The foregoing language was quoted and adopted in the later case of *Achilles* v. *Achilles*, 151 Ill. 136, and announced as the settled law of this State. Nor are earlier decisions of the court to the contrary, as seems to be supposed. On a former hearing of the *Achilles case, supra*, reported in 137 Ill. 589, we said (p. 598): "It is strenuously urged upon our attention that when this contract was signed the deceased and appellee were betrothed, and that, therefore, he sustained towards her a confidential relation, and she

cannot be regarded as having dealt at arm's length with him, and was not required to exercise her judgment or to seek information as to his property. We admit the correctness of the general rule that the parties to an antenuptial contract stand in a confidential relation to each other, which requires good faith and full disclosure and the absence of unreasonable and harsh provisions."

The case of *Barth* v. *Lines*, 118 Ill. 374, relied upon by counsel for appellants as an authority sustaining the validity of this agreement, is not in point. In the first place, the agreement in the *Barth case* showed upon its face the nature and character of the property owned by each of the parties, and it is fair to assume that Mrs. Lines, as a business woman, had at least some knowledge of its value. But the question before us in the *Taylor* and *Achilles cases*, and upon which this decision must turn, was neither discussed in the opinion nor decided in the *Barth case*. The issue there was, whether, in view of the statute of this State, an ante-nuptial agreement was in equity a sufficient jointure to bar dower. The rule announced in the *Taylor case* must be accepted as the settled law of this State.

We think it clear that under the proofs the chancellor was justifiable in finding that the provision made for the wife was unreasonably disproportionate to the husband's estate. Therefore the appellants, claiming under George M. Hessick, could only avail themselves of the alleged agreement by proving that the widow had knowledge of the character and extent of her intended husband's property at the time she executed it, or that the circumstances were such that she reasonably ought to have had such knowledge.

The latter qualification of the general rule brings us to a consideration of the second ground of reversal urged on behalf of appellants. Were the circumstances surrounding the parties at the date of this marriage contract, as shown by the evidence, such as that appellee

can reasonably be held to have had the requisite knowledge? We are inclined to adopt the conclusion of the court below in holding that they were not. But two facts were proved from which it can be inferred she had any information on the subject of his property, namely, that he was generally reputed to be wealthy, and that she had for years been well acquainted with and resided near him. The circumstance of his reputed wealth is entitled to but little weight as tending to prove that she knew the nature or value of his property. The reputation of persons as being rich or wealthy is too indefinite and general to charge those who deal with them with knowledge of the *kind* and *amount* of property they are possessed of. If it be true, as a general proposition, that appellee, residing in the immediate neighborhood of Hessick, would be supposed to know the size, character and value of the farm he resided upon, she cannot, from that circumstance alone, be fairly charged with knowledge of other land, money and chattel property owned by him. Under the qualifications of the rule it is as important that she be held to knowledge of the *character* of his property as that she knew of its value, and even more so. Here the husband owned money, notes, etc., of the value of more than $20,000. It is impossible to say from the proof in this record, that with reasonable knowledge of that fact the wife bargained away her prospective right to one-third of it. No facts or circumstances are proved upon the hearing from which it can be said she had, or ought to have had, the slightest knowledge of his being possessed of so large an amount of personal property. Without the agreement she could only hope to have a life interest in his real estate, whereas her ownership in the personal estate would be absolute.

The decree below is in conformity with the law and facts of the case, and must be affirmed.

*Decree affirmed.*