# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

BERTIE A. LANDES, Plaintiff in Error, *vs.* BERNARD S.
LANDES *et al.* Defendants in Error.

*Opinion filed April 22, 1915.*

1. EVIDENCE—*attorney in the case is not disqualified to testify.*
An attorney in the case is not disqualified to testify, although the
fact of his taking part as an attorney is to be considered on the
question of the weight to be given to his testimony.

2. ANTE-NUPTIAL CONTRACTS—*parties must exercise a high de-*
*gree of fairness and good faith.* Parties who are engaged to be
married occupy a confidential relation to each other calling for the
exercise of a high degree of fairness and good faith in the making
of an ante-nuptial contract.

3. SAME—*what is not ground for holding ante-nuptial contract*
*invalid.* The mere fact that the wife will not receive as much
from her husband's estate as she would had no ante-nuptial con-
tract been executed is not ground for holding the contract invalid.

4. SAME—*intended husband not required to estimate value of*
*real estate.* If the statement of property given by an intended
husband to his intended wife gives a proper and full description
of the real estate owned by him it is not necessary that he state·
its estimated value, particularly where the intended wife owns
real estate in the same neighborhood.

5. SAME—*when ante-nuptial contract will be upheld.* An ante-
nuptial contract will be upheld where the evidence shows that the
parties had lived in the same community and been intimately ac-

quainted for years, that they owned farms in the same neighborhood, and that the intended wife, before signing the contract, had in her possession a very fair and full statement of the property owned by the intended husband and after the marriage ratified the contract in several instances.

WRIT OF ERROR to the Circuit Court of Wabash county; the Hon. E. E. NEWLIN, Judge, presiding.

CREIGHTON & THOMAS, for plaintiff in error.

E. B. GREEN, and FRED B. MERRILLS, for defendants in error.

Mr. JUSTICE WATSON delivered the opinion of the court:

This litigation concerns the estate of Silas Z. Landes, deceased, and arises upon a bill in equity filed by his widow, Bertie A. Landes, against his children, Bernard S. Landes and Pauline S. Eichhorn, and the executor of his will, certain trustees and all devisees and legatees named in the will. Prior to the filing of the bill the widow filed the statutory renunciation of the benefits conferred upon her by the will and her election to take from the estate under the laws of the State. The cause was heard before the chancellor upon an amended bill, (which will be referred to herein as the bill,) the answer of the several defendants, (one of whom, being a minor, answered by a guardian *ad litem,*) and replications to the answers. The evidence was taken and heard in open court and without reference to a master in chancery, and a decree was rendered finding the issues for the defendants and dismissing the bill for want of equity, at complainant's cost. Thereupon this writ of error was caused to issue out of this court, thus bringing the record before us for review.

The purpose and object of the bill here under consideration are to have canceled and declared void a certain ante-nuptial contract made by and between the complainant,

while her name was Bertie Carpenter, and Silas Z. Landes, bearing date July 16, 1909, the execution of which contract by the complainant she alleges was the result of fraud and deceit practiced upon her by the other party thereto, he being her affianced husband, and it is the duty of this court to determine whether the decree of the circuit court is justified by the law and rests upon a sound basis in evidence that is both credible and free from legal objection.

The substance of the ante-nuptial contract aforementioned may be briefly given as follows, the husband being the first and the wife the second party to the contract: The parties have mutually agreed to marry each other, provided the contract shall first be executed. It recites the ownership of real and personal property by each and the desire of each to adjust and fix the rights of the survivor in the property of the other. The first party waives all right in the estate of Bertie Carpenter in case he should survive her. The first party has paid the second party the sum of $4300, and agrees that she shall receive the further sum of $5700, and no more, from his estate, less such amounts, if any, as he may pay her on account thereof before his death. The second party waives her right of dower, widow's award and all other rights, statutory or otherwise, in the estate of the first party in the event she shall survive him, except as to said sum of $5700 and except as to her right to an estate of homestead. Each party admits that each has been fully and thoroughly informed by the other as to the amount, kind, location and character of the real and personal property of the other and accepts the provision made for him or her in the property of the other, without regard to the proportion the amount to be received bears to the whole estate of the one who shall first pass away, mutually covenanting that the execution of the instrument shall equitably estop and bar each to question or attack the adequacy of provision made for the survivor out of the estate of the other. Each of the parties

also agrees to join in the execution of deeds at the request of the other, after marriage.

The property scheduled in the contract as being owned by the second party is as follows: A two-story brick dwelling on Third street, in Mt. Carmel; an eighty-acre farm near Bellmont, in Wabash county, and some money and personal property aggregating in value ....... dollars. The property of the party of the first part scheduled in the contract is as follows: About five hundred acres of farm land in Wabash county, on the Wabash river, about three miles southwest of Mt. Carmel; a part of in-lot 480 in Mt. Carmel, fronting about eighty feet on Market street, on which are located four brick business buildings; in-lot 491 and out-lots 148 and 150 in Mt. Carmel; a life interest in a part of said in-lot 480, with a frontage of eighty feet on Market street; also Philippine bonds of the par value of $10,000; Illinois Central railroad stock of the par value of $6000; money loaned and cash approximating $12,800; bank stock of the par value of $2000; a life annuity of $350; paid-up life insurance of the value of $797; straight life insurance policies of $2500 on his own life; 1150 shares of the capital stock of an Alaskan development company and 2300 shares in the Ivanhoe Mining Company, both valueless; household effects, personal property on farm, and other items, of the value of $3000.

The contract was executed in duplicate and was acknowledged on July 17, 1909, by each of the parties, and they were united in marriage on August 4, 1909. Silas Z. Landes was sixty-seven years of age when he died, on May 23, 1910. He had lived in Mt. Carmel about forty-five years continuously and was well known there, having been congressman, circuit judge, State's attorney, master in chancery and county judge. He was considered, and had become, one of the wealthiest men in the city as well as in Wabash county. When, in March, 1909, he proposed marriage to Mrs. Bertie Carpenter, who was past fifty years

of age and whom he had known since her childhood, he was in poor health, being afflicted with an enlarged prostate gland and resultant cystitis. During the negotiations which led to the nuptial union between himself and Mrs. Carpenter, and incidentally to the execution of the antenuptial contract, he suffered greatly, and during the latter part of that period he was relieved daily of his urine mechanically, and was having his bladder washed out daily in preparation for an operation for the removal of the gland, which operation was performed September 25, 1909, at Indianapolis, resulting in a fairly good, incomplete recovery. The evidence shows he was under manual treatment for this trouble daily, at least from June 3 to August 4, 1909, being catheterized several times daily, and being under the care of a trained nurse from June 8 to within a few days of the marriage. The complainant, plaintiff in error, was an old friend of Judge Landes and was the daughter of Judge McDowell, who was quite intimate with him for many years in Mt. Carmel and who held office under him while Judge Landes was in Congress. Judge Landes was executor of the last will of Judge McDowell and as such settled up the estate, and in that as well as in other matters served as the business adviser of Mrs. Carpenter, at least during her widowhood. The plaintiff in error had one child, a daughter, who was married and with her husband lived in Mt. Carmel. The proof shows the plaintiff in error consulted with her daughter and son-in-law, and also with Dr. Manley, concerning the proposal of marriage made to her by Judge Landes in March, 1909, and that she consulted with attorney Ramsey in the year 1904, in which conversation he told her he estimated Judge Landes' wealth at from $100,000 to $125,000, and she told him she understood from her father that he was worth $200,000. On September 15, 1909, Judge Landes made his will. It is not shown that his wife knew of the will, but on the same day she received from him $50 and receipted him therefor on

the ante-nuptial contract. The will makes reference to the said contract and provides for the prompt payment of the actual amount due thereunder. Also by the will she is given the additional sum of $500 from his estate. On the night of Saturday, May 21, 1910, attorney Kolb was called to the Landes residence and was employed to draw a paper evidencing an ante-mortem gift from Judge Landes to his wife of a few articles of household and other personal property of small value and was given a memorandum which Mrs. Landes said she had written. In the presence of the parties Kolb wrote some additional memoranda on the same paper and later prepared and returned the contract. As drawn, and as executed by both of the parties, it made reference to the $500 bequest and to the ante-nuptial contract, and by its closing paragraph, which was not in the memorandum prepared by Mrs. Landes, the ante-nuptial contract "is hereby again expressly ratified and confirmed." That paragraph was written in with a pen after Kolb returned to the residence with the contract and before it was signed. No one saw the signing, but Mrs. Landes admitted she signed it on Sunday afternoon, May 22, without knowing of the clause re-affirming the ante-nuptial contract, and the proof shows she was in a highly nervous condition on that Sunday, having had a fainting spell during the forenoon and having been found unconscious on the bath-room floor. The will of Judge Landes was admitted to probate and letters testamentary issued August 1, 1910. On that day the executor, the son of the testator, went to the home to take possession of the personal property belonging to the estate. Some unpleasantness arose between him and his step-mother, but her son-in-law assumed charge of the matter for her and a few days later the goods were removed by his direction and without remonstrance from the plaintiff in error. Attorney Risley is a trustee under the Landes will, and about two weeks after the testator's death Mrs. Landes inquired of him about the balance due

her under the ante-nuptial contract and as to whether its payment would have to await the final settlement of the estate, asking him to mention the matter to the executor. On August 26, 1910, the plaintiff in error signed a receipt at the bank where Henry T. Goddard, another trustee under the will, was employed, acknowledging the receipt from the executor of $500 "in part payment of balance due me under the ante-nuptial contract entered into between said deceased and me, mentioned in said will." The plaintiff in error testified that she thought she was signing a receipt for the $500 left her by the will, and later she tendered the sum, with interest, to the executor and to each trustee, and has since paid the amount to the clerk of the county court for the benefit of the estate.

The widow's renunciation of the will was filed June 3, 1910, and the suit now before us was instituted in October, 1911. However, a chancery suit had been begun to the November term, 1910, of the Wabash circuit court by the trustees under the will and by the executor and others, making the widow defendant, and praying an assignment of the homestead estate of the widow. After a decree in that court fixing the value of such estate the cause was brought to this court and such decree was reversed, and later that litigation was terminated by the entry of a decree fixing the value of the homestead estate of the plaintiff in error at $1000. That sum was paid to her and the possession of the homestead was surrendered by her. This cause is reported in this court as *Goddard* v. *Landes,* 250 Ill. 457. It is contended here by the defendants in error that because of certain statements made by the answer filed in that cause, and particularly because of certain statements made in the brief and argument there filed for Mrs. Landes, she is estopped from denying the validity of the contract and also from claiming dower. In passing upon the former case this court said: "There is an allegation in the bill respecting the execution of the ante-nuptial contract

268 – 2

and a denial thereof in the appellant's answer. No evidence was introduced by either party on this issue except the ante-nuptial contract. No relief was prayed in regard to such contract and there is no reference to it in the record. The appellant suggests, both in her brief and in the oral argument of her counsel in this case, that she desires to save whatever right she may have to attack the validity of the ante-nuptial contract for fraud and misrepresentation. No question relating to the ante-nuptial contract was involved in this proceeding. The bill conceded that the appellant is entitled to a homestead in the premises in question, and the reference to the ante-nuptial contract in the bill seems to have been merely for the purpose of showing that the homestead right was excepted from the terms of the agreement. No adjudication of the validity of the ante-nuptial contract was necessary or proper under the issues in this case." We now adhere to that statement, and also hold that no right of any party to that suit was determined except that put in issue by the pleadings in that case and passed upon by the court.

In the case now before us the errors assigned are nine in number, but we shall consider them under two general heads, being, first, the admission of improper evidence; and second, the dismissal of the bill for want of equity.

Complaint is made of the admission of the evidence of attorney Kolb, who was counsel for the defendants in error and participated actively in the trial in the circuit court until he was called as a witness, or shortly before that. This court has held such conduct may, and perhaps often does, affect the weight to be given to the testimony of the witness, but we think the trial court was right in receiving the evidence subject to objection and in giving it such credit as he thought it entitled to. (*Wetzel* v. *Firebaugh*, 251 Ill. 190; *Bishop* v. *Hilliard*, 227 id. 382.) We think, also, his testimony wholly unimportant, for the signatures and other writing of the plaintiff in error testified to by him could

as well have been proven by others, and the remainder of his statements proves nothing either vitally or casually important.

It is further·contended by plaintiff in error that it was error to admit the evidence of two local physicians and of the operating surgeon concerning the physical ailments and sufferings of Judge Landes during the spring and summer of 1909 and before his marriage to the plaintiff in error. It is fairly inferable that the lady knew of his condition of health in a general way, and it is clearly important the court should know it, especially to enable the court to judge of the righteousness of his marriage bargain, and particularly in view of the charge made and relied on that during the period of his pain and distress it was a badge of fraud that he consulted competent counsel concerning the preparation and legal effect of the contract here in question.

The second head under which we choose to consider the assignments of error leads more directly into the merits of the case. By the painstaking care of counsel on both sides we are furnished with a very complete list and summary of the authorities on ante-nuptial contracts, together with luminous arguments on the facts in their relation to the authorities. It would serve no useful purpose to descant here upon all of the authorities referred to, nor to attempt to illumine these pages with quotations therefrom. It is enough that we cite and approve a few which establish or confirm the general principles which enter into every contract of this character.

The relation of the parties being confidential, calls for the exercise of a high degree of fairness and good faith on the part of each. (*Hessick* v. *Hessick*, 169 Ill. 486; *Taylor* v. *Taylor*, 144 id. 436; *Achilles* v. *Achilles*, 151 id. 136; *Russell* v. *Russell*, 129 Fed. Rep. 434; *Kline* v. *Kline*, 57 Pa. St. 120; 2 Beach on Contracts, sec. 1300.) If the provision for the wife is disproportionately small, those contending for the validity of the contract have the

burden of proving knowledge in the wife of all facts materially affecting her rights. (*Warner* v. *Warner,* 235 Ill. 448; *Pierce* v. *Pierce,* 71 N. Y. 154.) Reputation for wealth is not sufficient to charge the woman with notice of the kind and amount of the man's property. (*Mines* v. *Phee,* 254 Ill. 60.) The rules governing the construction of contracts apply here. (*Collins* v. *Phillips,* 259 Ill. 405.) Ante-nuptial contracts should be dispensed with if they are to be held invalid solely because the wife does not receive as much as she would if there were no contract. (*Stokes* v. *Stokes,* 240 Ill. 330.) The surrounding circumstances and the ownership by the parties of farms in the same neighborhood show the wife reasonably should have had knowledge of the value of the husband's property. *Achilles* v. *Achilles, supra; Yarde* v. *Yarde,* 187 Ill. 636.

Applying now the said principles to the contract here involved and to the facts surrounding it, we find that upon sure information imparted to her by her father and by Ramsey, plaintiff in error knew Judge Landes was worth somewhere from $100,000 to $200,000. If she chose to take the lowest figure as correct she was apparently willing to make the bargain for $10,000, a sum vastly less than she would have received had she become his wife without a business arrangement. The estate proved to be worth about $130,000, of which some $85,000 was in real estate. Allowing for the facts that some of his personal holdings were worth more than par, that he had made some small changes in the identity of his property, and that he had received considerable income between the date of the contract and his death, we conclude he made a more detailed and accurate statement of his property to his intended wife than the rules of law or equity require. It will be observed that he listed his personal property at its par or face value and did not value his real estate in the contract. Valuations, both on real and personal properties, are but estimates, and Judge Landes was under no legal obligation to

inform his betrothed as to his estimates of value, but he was required to, and we think did, inform her substantially as to what he owned, and he was required to so describe and locate his property as to enable the plaintiff in error, by the use of ordinary means within easy reach of every intelligent person, to determine the truth and accuracy of his statements. (*Taylor* v. *Taylor, supra; Achilles* v. *Achilles, supra; Hessick* v. *Hessick, supra; Yarde* v. *Yarde, supra.*). Having known Judge Landes well from her childhood; having lived for many years in the same small community; having, by inheritance, real estate, both farm and city property, not remote from his own; being well acquainted among the professional and business men of Mt. Carmel, (one of the latter being her son-in-law,) it would have been no difficult matter for the plaintiff in error to get reliable estimates of value on the items of real and personal property mentioned in the contract, a copy of which she seems to have had almost three weeks after it was signed and before the marriage.

We hold, also, that this contract was fully ratified and confirmed by the plaintiff in error on several different occasions after the marriage, notably (1) when she wrote a receipt on it for $50 on September 15, 1909; (2) by the execution of the contract prepared by Kolb the day before her husband's death, containing the clause expressly ratifying and confirming the ante-nuptial contract; (3) in her conversation with trustee Risley about collecting the balance due, after her husband's death; and (4) by signing a receipt for $500, on account of the contract, at the bank, on August 26, 1910.

There are other objections to and criticisms of the decree and of the rulings of the court upon the admission of evidence which we do not find it necessary to consider and pass upon in detail, but from what is above said we have no doubt made it clear that Judge Landes committed no fraud and practiced no deceit upon the plaintiff in error in

order to induce her to execute the contract now complained of; that after her marriage, and after his death, she ratified and confirmed the contract freely and voluntarily and without the practice of fraud or deceit by anyone.

The decree of the circuit court must be, and is therefore, affirmed.

*Decree affirmed.*