## CIRCUMSTANCES WHICH RENDER VALID AN ANTE-NUPTIAL CONTRACT.

Common Pleas Court of Preble County.

HATTIE E. STOTLER v. JOHN H. STOTLER ET AL.

Decided, June 16, 1916.

*Ante-Nuptial Contracts—Parties Thereto Do Not Deal at Arm's Length, But Stand in a Relation of Confidence—Highest Degree of Fairness and Good Will Must be Exercised—Fraudulent Concealment Will be Presumed Against the Husband, When—Rights of the Wife After Becoming a Widow Not Barred Unless Contract Has Been Fairly Performed by the Husband.*

1. An ante-nuptial contract, fairly and freely entered into with a full understanding of the effect it will have upon the future rights of the respective parties, will not be held invalid solely because the wife does not receive as much as she would under the law if there was no contract.

2. It is the duty of the husband not only to inform her of the extent of his wealth before such contract is entered into, but to advise her as well of the nature, extent and value of the interest in his estate she was giving up, and if the provision made for her is apparently inequitable, unjust and unreasonably disproportionate to the means of the intended husband, a fraudulent concealment thereof will be presumed, and before she will be held thereto those contending for the validity of the contract have the burden of establishing full knowledge on her part of all facts materially affecting her rights.

3. Such contract will not operate to bar the wife of her rights as widow under the law in his estate, unless the husband while he lived fairly performed the provisions thereof accruing in her favor during his lifetime.

*Lowry & King, Risinger & Risinger* and *P. A. Saylor,* for plaintiff.

*Fisher & Crisler, Shockney & Chattin,* and *E. P. Vaughan,* contra.

BOWMAN, J.

The plaintiff brings this action as the widow of Edward S.

Stotler to set aside and cancel an ante-nuptial contract, which she entered into with the deceased prior to their marriage.

The amended petition contains two causes of action. In the first she alleges her want of knowledge of the extent, character and value of his property and his failure to disclose the same to her, and that the amount provided for her in said contract was so disproportionate to his wealth as to render it invalid; and in the second, that the deceased failed to carry out the contract in his lifetime.

The defendants demur on the ground that neither states facts which show a cause of action.

It is elementary, that every cause of action must contain two factors: (1) plaintiff's primary right and defendant's corresponding primary duty; (2) the wrongful act or omission of the defendant by which such primary right and duty have been violated, and the material facts only which constitute such primary right and duty and the wrongful act or omission violative thereof, need be alleged.

It is necessary therefore to ascertain and determine the relative rights and duties of the parties to said contract at the time of the execution thereof.

It is the settled law of this state, that such contracts will be upheld if fair, reasonable and just as between the parties, in view of all the circumstances of the case at the time of the execution thereof. *Grogan* v. *Garrison*, 27 O. S., 64. If fairly and freely entered into, with a full understanding of the effect they will have upon the future rights of the respective parties, they will not be held invalid *solely* because the wife does not receive as much as she would under the law if there was no contract.

But if the provision made for the wife is disproportionate to the means of the intended husband, or is apparently inequitable, unjust and unreasonable, a presumption arises of concealment of his financial condition and that he did not make a full disclosure thereof, and those contending for the validity of the contract have the burden of proving full knowledge on her part of all facts materially affecting her rights. *Rankin* v.

*Schiereck*, 166 Ia., 10; *Fisher* v. *Koontz*, 110 Ia., 498, 500; *Graham* v. *Graham*, 143 N. Y., 573, 579; *Pierce* v. *Pierce*, 71 N. Y., 154, 158; *Landes* v. *Landes*, 268 Ill., 11; *Warner* v. *Warner*, 235 Ill., 448, 462; *Hessick* v. *Hessick*, 169 Ill., 486; *Gaines* v. *Gaines*, 163 Ky., 260; *Russell* v. *Russell*, 129 Fed., 441; *Warner's Estate*, 210 Penn., 431, 434; *Duttonhofer* v. *Duttonhofer*, 12 O. Dec., 736, 743.

The courts are required, therefore, rigidly to scrutinize all the circumstances surrounding the execution of such contracts, because the parties are not dealing at arm's length, but stand in such a relation of confidence to each other as to call for the exercise of a high degree of fairness and the utmost good faith on the part of each. In *Russell* v. *Russell*, 129 Fed., 434, it is said at page 441:

"It can not be expected that either will pry into the money affairs of the other, except possibly in the most general way; or conduct an independent investigation with regard to them. The amenities of the situation forbid it, if nothing else. It is too suggestive of a mercenary motive in the marriage, which should be prompted by mutual affection, to be sanctioned. Each must therefore, of necessity, derive knowledge from the other of his or her property, and both must be frank. No agreement on any other basis will stand, as all the cases attest."

In *Kline* v. *Kline*, 57 Penn., Mr. Justice Sharswood, speaking at page 122, says:

"There is perhaps no relation of life in which more unbounded confidence is reposed than in that existing between parties who are betrothed to each other. Especially does the woman place the most implicit trust in the truth and affection of him in whose keeping she is about to deposit the happiness of her future life. From him she has no secrets; she believes he has none from her. To consider such persons as in the same category with buyers and sellers, and to say that they are dealing at arm's length, we think is a mistake."

Referring to the facts in that case, he says at page 123:

"To say that she was bound when the contract was proposed to exercise her judgment, that she ought to have taken advan-

tage of the opportunity that existed to obtain information, and that if she did not do so it was her own fault, is to suggest what would be revolting to all the better feelings of woman's nature. To have instituted inquiries into the property and fortune of her betrothed, would have indicated that she was actuated by selfish and interested motives. She shrank back from the thought of asking a single question. She executed the paper without hesitation, and without inquiry. She believed that he would propose nothing but what was just, and she had a right to exercise that confidence."

Therefore, as said in *Warner's Estate*, 210 Penn., 434:

Plaintiff "had a right to assume that her prospective husband would act *justly* with her. Hence his duty to be frank and unreserved in the disclosure of all the circumstances materially bearing on the contemplated agreement. The *duty* and *responsibility* of full disclosure were his."

But mere disclosure alone was not the full measure of his duty, nor is it true that it "hath this extent, no more." Something more was required of him. It was his further duty "to advise her of the nature and extent of the interest in his estate that she was giving up." *Slingerland* v. *Slingerland*, 115 Minn., 270, 275.

Applying now these principles to the facts alleged in the first cause of action, we find that at the time of the execution of said contract the plaintiff was a widow with four minor children without property or means and wholly dependent upon her own labor for the support of herself and children, and that her situation at said time was fully known to said Edward S. Stotler; that his sole and only heir-at-law was a son by a former marriage; that he was in his seventy-fifth year, and worth far in excess of $100,000, and at his death sixteen years later, he was worth, over and above all indebtedness, including costs of administration, about $350,000.

The provisions for the plaintiff under said contract were the payment to her of the annual sum of $100 during their joint lives, and $6,000 at his death, to be evidenced by his promissory note payable at that time, with interest after maturity.

These provisions were to be in lieu of and in full satisfaction

to plaintiff of her dower, distributive share and all statutory or other rights that she would be entitled to in his estate as his widow by virtue of their marital relations in the event she survived him.

No one will claim that she will receive anything near as much as she would under the law if there was no contract. All must concede that the provisions made for her are not only disproportionate to the amount she would have received if there had been no contract, but so unreasonably small when compared thereto as to be unfair, inequitable and unjust. But however that may be, she will be bound and concluded thereby if she was duly advised and informed by her prospective husband of the extent, character and value of his property, and of all the facts materially affecting her rights, and the nature and extent of the interest in his estate she was giving up.

This he did not do. Not only so, but she had no knowledge thereof, the allegation being—

"That said Edward S. Stotler did not disclose to her, and she had no knowledge of the nature, character or amount of his property."

If she had no knowledge thereof and he did not make a full disclosure of the same to her, a fraudulent concealment thereof on his part will be presumed, and the contract should be set aside upon the presumption of such fraudulent concealment. *Warner's Estate*, 210 Penn. St., 431, 434.

She may have known that he was reputed a rich man, and not know the extent of his wealth. Reputation of wealth, however, is not enough, for it is too indefinite to charge her with knowledge of the kind and amount of his property. *Mines* v. *Phee*, 254 Ill., 60, 62; *Landes* v. *Landes*, 268 Ill., 11.

It follows that the first cause of action states facts sufficient to show a cause of action, and the demurrer thereto is overruled.

Coming now to the demurrer to the Second cause of action, it is alleged therein that for many years prior to his death, Mr. Stotler failed and refused to make said annual payments to his wife provided in said contract, and treated the same as canceled and absolutely null and void and no longer in ex-

istence or binding upon the parties. Notwithstanding these averments, it is urged in support of the demurrer, that his failure to make said payments did not abrogate or annul the same; that it was not in his power to rescind, set aside and cancel said agreement by his failure to make such payments, and that the utmost claim of plaintiff now to relief because of his failure to carry out the same in his lifetime is against his estate to recover the amount thereof.

It may be conceded that it was not in his power to rescind said contract as as against the plaintiff, without her consent or acquiescence, by his mere failure to comply therewith. But here the question is not so much whether he could do so, as whether the wife is bound by the provisions of a contract that her husband did not recognize as binding upon him nor carry out or perform in his lifetime. He was not at liberty wholly to ignore its provisions in her favor during his lifetime and insist at the same time that she was to be bound thereby. Unless a contract is binding on both parties, it is not binding on either of them. *Rehm-Zeiher Co.* v. *Walker Co.*, 156 Ky., 6.

While some courts have held that misconduct of one party to an ante-nuptial contract or refusal or failure fairly to carry out or comply in good faith with the provisions by such party to be performed will not release the other unless a stipulation to that effect is contained in the contract, it is the settled rule in this state that it will not operate as such bar even in the absence of such stipulation unless fully performed upon the part of the other. *Phillips* v. *Phillips,* 14 O. S., 308, 314. If, therefore, plaintiff is to be held to its terms, her husband was equally bound to perform its conditions in her favor during his lifetime.

Here the contract obligated the husband while he lived to pay plaintiff the annual sum of $100. This it is alleged he failed to do for many years prior to his death. If so, it was not performed on his part, and if he had thereby released her from its obligations and she was no longer bound thereby, it is not now in the power of his legal representatives to hold her thereto merely because she would have a claim for said unpaid instalments against the estate of her deceased husband, nor would a

tender or offer to pay the same now affect her right to insist that the contract should be set aside.  *Slingerland* v. *Slingerland*, 115 Minn., 270, 276.

As it is alleged in the second cause of action not only that the contract was not even fairly performed, but for many years was not performed at all, the facts therein alleged show a cause of action.

The demurrer thereto is therefore overruled.