CORA M. DENISON et als., In Equity vs. ISABELLE A. DAWES.

Cumberland.    Opinion June 10, 1922.

*Ante-nuptial agreements will not be enforced in equity if the husband is guilty of con-*
*structive fraud by not imparting to his prospective wife a full knowledge and under-*
*standing of all the facts materially affecting her interests, unless the wife*
*with full knowledge of all the conditions and circumstances subse-*
*quently acquiesced in the agreement and waived her rights, or*
*is estopped from setting up constructive fraud as a*
*defense.*

Parties to an ante-nuptial agreement, especially if an agreement to marry has already been entered into, occupy confidential relations to each other, and the wife has the right to impose the fullest confidence in her prospective husband, and without seeking outside advice, rely upon his dealing fairly with her.

Where the provisions for the wife as the survivor is clearly disproportionate to the amount of the husband's wealth, it raises a presumption of designed concealment and places the burden on those claiming under it to show that there was full knowledge and understanding on the part of the wife of all facts materially affecting her interests.

In the case at bar the provisions for the wife were clearly disproportionate to the wealth of the husband, and even if the disproportion is not so great as to *ipso facto* render the agreement without the right of being enforced in equity if entered into understandingly, it is sufficient to throw the burden on the plaintiffs in this case to show that the defendant entered into it with a full understanding of the extent of her prospective husband's wealth and the effect of the agreement upon her rights. By reason of the confidential relations existing, it was the duty of the husband to see that she was fully informed, otherwise an implication of bad faith follows.

The plaintiffs failed to show that the husband acted in good faith under such circumstances, and also failed to show that defendant with a full knowledge of all the conditions and her rights later acquiesced in the agreement or is now for any reason estopped from setting up as a defense constructive fraud on the part of her husband.

Acquiescence and waiver are positive acts and the burden of proving it is on the party claiming it. Neither will silence alone constitute an estoppel, unless it appears it was known that it would be acted upon to the injury of the other party, or was maintained with the deliberate intent to deceive or obtain an advantage.

On appeal.   This is a bill in equity brought by Cora M. Denison, daughter of Samuel H. Dawes, late of Harrison, deceased, and Herbert H. Dawes, executor of the will of said Samuel H. Dawes, against Isabelle A. Dawes, widow of the said Samuel H. Dawes, to compel performance by said Isabelle A. Dawes of a certain ante-nuptial agreement alleged to have been entered into by the said Samuel H. Dawes and the said Isabelle A. Dawes, under the name of Isabelle A. Gray.   The cause was heard upon bill and answer, and the sitting Justice sustained the bill and granted the relief prayed for, and the respondent appealed.   Appeal sustained.   Decree of sitting Justice reversed.   Bill dismissed with one bill of costs.

The case is fully stated in the opinion.

*Harry R. Virgin,* for complainants.

*Gerry L. Brooks and Edgar F. Corliss,* for respondent.

SITTING:   CORNISH, C. J., HANSON, PHILBROOK, MORRILL, WILSON, JJ.

WILSON, J.   A bill in equity to compel the defendant to perform a certain ante-nuptial agreement entered into between her and her husband, the late Samuel H. Dawes, prior to their marriage in 1906, and to restrain her from enforcing her rights as his widow to an allowance from his estate, or from claiming any part of his estate under the statutes of this State, she having waived the provisions of his will which provided for her in accordance with the terms of the alleged ante-nuptial agreement.

The defendant in her answer denied having entered into such an agreement.   No copy of it was found among the papers of the deceased, but notice to produce a copy alleged to have been delivered to her at the time of the execution, and its execution having been proved to the satisfaction of the sitting Justice, oral evidence of its contents was properly received.   *Camden* v. *Belgrade,* 78 Maine, 204, 209.

The defendant's counsel, however, contends that, admitting the existence of such an agreement, the provisions for the defendant were disproportionate to the wealth of the husband and inadequate, and good faith was not exercised by him toward her, in that under the confidential relations then existing between them, she was not fully apprised of the extent of his wealth, or of her rights in the same as his

survivor, or to what extent and in what manner her rights therein were affected by the proposed agreement; that the agreement was therefore tainted with either actual or constructive fraud and should not be enforced in favor of his representative in a Court of Equity.

The sitting Justice made no specific findings of fact bearing upon these contentions, simply holding that the bill should be sustained.

Such a conclusion, however, must have been based upon a finding that no actual or constructive fraud was shown, and that mere inadequacy of the provisions, if entered into in good faith, was not sufficient to invalidate such an agreement; or that if there was a lack of good faith and actual or constructive fraud at the time of the execution of the agreement, the defendant later was fully apprised of the conditions and of any such fraud, and not having taken any steps to avoid such agreement during the lifetime of her husband, must now be held to have acquiesced in the agreement and waived the fraud, or to be estopped from avoiding it upon this ground.

Parties to an ante-nuptial agreement, especially if the agreement to marry has already been entered into, occupy a confidential relation to each other. After betrothal a woman is presumed to be subject in such matters to the influence of her prospective husband, and has the right to repose the fullest confidence in him, and without seeking outside advice, rely upon him to deal fairly with her in an agreement of this nature. If the husband's estate benefits thereby, there should in good faith on his part be a full disclosure of the nature and amount of his property, and the wife be fully advised of her rights in the premises. Where the provision for the wife as the survivor is clearly disproportionate to the amount of the husband's wealth, it raises a presumption of designed concealment and places the burden on those claiming under it in his right to show that there was a full knowledge and understanding on the part of the wife at the time of execution, of all the facts materially affecting her interests, viz.: the extent of his wealth and her rights in his property as his survivor, and how modified by the proposed agreement. Achilles v. Achilles, 151 Ill., 136, 139; Mines v. Phee, 254 Ill., 60; Spurlock v. Brown, 91 Tenn., 241, 258, 261; Pierce v. Pierce, 71 N. Y., 154, 158; Graham v. Graham, 143 N. Y., 573, 580.

In the case at bar the provisions for defendant were clearly disproportionate to the wealth of her husband. At the time of the execution of this agreement, he possessed approximately fifty thou-

sand dollars, and at his death left an estate of over sixty-five thousand dollars. The present worth of an annuity of four hundred dollars, the sum provided for her in the agreement, during the remainder of her life after his decease, based upon their relative expectancy of life according to the Mortuary Tables, was approximately twenty-five hundred dollars, and at his death was only worth about fifteen hundred dollars, or perhaps slightly more owing to the higher rates of interest prevailing at that time.

Even if the disproportion is not so great as to *ipso facto* render the agreement unenforceable in equity, if entered into in good faith, it is sufficient to throw the burden on the plaintiffs who seek to benefit by the agreement, of showing that it was entered into with a full understanding on the part of her who is adversely affected, not only of its provisions, but its effect upon her as the survivor of her prospective husband. Upon this point, we think the plaintiff's evidence manifestly fails.

Mr. Dawes, the husband, at the time of the marriage in 1906, was seventy-eight years of age, and the defendant sixty-five. They had known each other since childhood. He had been twice married. She was a spinster. He sought by letter in the spring of 1906 to renew their early acquaintance, evidently with the purpose on his part of a prospective marriage.

It is a fair inference from the testimony that his plans did not always meet with the approval of his family, and at times, as appears in his letters in the case, he resented the interference; but that finally the marriage was not opposed, but was looked upon with some favor, presumably upon the condition that an agreement of the nature of the one executed should be entered into. So far as the evidence discloses, the defendant faithfully performed her duties as companion and helpmate during the fifteen years of their married life, the last three of which the husband was in a state of almost helpless senility. The agreement was prepared by the daughter's brother-in-law, a practicing attorney in Boston, and by him forwarded to an attorney in Maine, who later brought it to the home of Mr. Dawes for execution on the morning of their marriage.

The case, however, is barren of evidence that it was ever mentioned to the defendant that such an agreement was to be made a preliminary to the marriage, or that she was in any way apprised of the fact that one was being prepared.

On the morning of the marriage, without previous notice to her, the attorney to whom the agreement was forwarded from Boston, appeared at the home of Mr. Dawes, and without any explanation so far as the evidence discloses, except the statement that he had brought the marriage settlement, produced the agreement which was prepared in duplicate, and proceeded to read it. He was stopped by Mr. Dawes, who requested, owing to his not hearing distinctly, that he be allowed to read it himself. A copy was then handed to him and one to the defendant, which after both reading and apparently indicating their assent, it was executed without further explanations or comments.

The evidence does not disclose that the defendant was advised what her rights were, what property her prospective husband possessed, or what rights she was surrendering by the signing of such an agreement. It is not enough that she was an intelligent woman. The confidential relations which then existed between her and her intended husband require the plaintiffs to show that she did know and fully understand not only the nature of the instrument, but its effect upon her in case she survived her husband.

Not only does the evidence fail to show that she had any knowledge of his financial standing, unless by repute, which is not sufficient to sustain the burden imposed upon those seeking to benefit by such an agreement, *Mines* v. *Phee*, 254 Ill., 60, 62; *Hessick* v. *Hessick*, 169 Ill., 486; but her intended husband for some reason had taken occasion to warn her against being misled by reports as to his wealth, saying he was not rich, but only claimed to have enough to keep their children from crying for bread, which the defendant had a right to assume was a jocular way of disabusing her mind of any expectation that she was marrying into affluence, and at the same time assuring her that there was no danger of their being reduced to want in their declining years.

Certainly there was nothing in the letter in which this statement was contained or in the evidence to suggest to the defendant that when she signed the agreement on the morning of her marriage, she was releasing her rights in an estate of fifty thousand dollars, and which at his death amounted to over sixty-five thousand dollars, for an annuity after his death and during the remainder of her life of four hundred dollars and the other consideration of doubtful value,

considering their relative expectancy of life, of a waiver on his part of his rights in her estate, which did not then exceed six or seven thousand dollars.

She was not dealing with him at arm's length and presumed to know the contents and effect of the instrument she was signing, but had the right to rely upon the good faith of the man she had agreed to marry and put her trust and confidence in him, that he would not seek to overreach her on the morning of her marriage. Schouler Dom. Rel., Sec. 183; *Lamb* v. *Lamb*, 130 Ind., 273, 276; *Achilles* v. *Achilles*, supra. She had a right to assume, if she understood the nature of the document at all, which she signed, that he was making such provision for her as was in keeping with his wealth and her age and station in life. The burden was not upon her to inquire, but upon him to inform. Especially is this so where anything said or done by the husband might mislead the wife as to the extent of his property, or the circumstances of the execution were such as to discourage inquiry by her in relation to her rights in the premises. 13 R. C. L., 1034; 21 Cyc. 1249, 1267; *Warner* v. *Warner*, 235 Ill., 448, 462; *Hessick* v. *Hessick*, 169 Ill., 486, 492-3.

If the agreement had been entered into in consideration of the agreement to marry, it might stand upon a more favorable basis as to the representatives of the husband's estate. The agreement to marry, and the consequent legal duties of the husband after marriage might be held to counterbalance the disproportion between the provisions made for her as his survivor and the amount she would otherwise be legally entitled to receive from his estate; and so might be held to remove the presumption of constructive fraud. But from the evidence in the case, an agreement to marry had already been entered into without the rights of the survivor in the property of the other entering in as a consideration. This agreement must, therefore, stand or fall by itself.

Having in mind the rule in equity that upon appeal, a decree so far. as based upon facts found by the sitting Justice, will not be reversed or modified unless manifestly wrong, if the decree of the sitting Justice in this case could rest upon the absence of actual fraud shown, and a presumption that the defendant understood the nature and effect of the instrument which she signed, it would not be disturbed. And, too, if the mistake or ignorance of the wife was one of law solely, equity might not relieve. Where, however, it is induced

or accompanied by other special facts giving rise to an independent equity, such as unequitable conduct on the part of the prospective husband, then a Court of Equity will interpose its aid. Pomeroy's Equity Juris., Vol. II, Sec. 842. But by reason of the confidential relations clearly existing between the defendant and her intended husband at the time of the execution of this agreement, and the failure of the plaintiffs to show that good faith required of the husband under such circumstances, we think equity requires that the relief prayed for by those seeking to profit by this agreement should be denied; and if the decree of the sitting Justice was based upon a finding of good faith on the part of the husband and an absence of constructive fraud, it is manifestly wrong and should be reversed; unless, of course, it appears that the defendant later with a full knowledge of the facts, acquiesced in the arrangement and waived the *mala fides* or is now estopped from setting up this defense in this action. Upon this point the sitting Justice makes no finding.

The defendant herself, however, admits that within a few years after their marriage, her husband did inform her that he possessed property of the value of fifty thousand dollars, and the plaintiffs contend that with this information, not having avoided the agreement in his lifetime, she must be presumed to have acquiesced in the arrangements made for her and should not now be permitted to defend on the ground of fraud at the time of its execution.

Acquiescence and waiver, however, are positive acts, the relinquishment of some known right or advantage, the burden of proving which is on the party claiming it. Full knowledge of the rights waived must be shown. *Holt* v. *New Eng. Tel. & Tel. Co.*, 110 Maine, 10. The evidence in this case falls short of such proof. The agreement required no acts by her in his lifetime. There were no benefits accruing to her during his lifetime which she accepted. Nor do we think the conditions made it her duty to speak, and failing to do so, she must be presumed to have acquiesced. He could not then have changed the situation without her consent. He could not revoke the marriage, nor compel her to make a new agreement. He must be presumed to have been cognizant at all times of the lack of good faith on his part at its inception. The duty, if any, was his to repair the wrong he had done. Should those seeking to profit by his wrong now complain because the defendant did not make known to him

during his lifetime what it must be presumed he already knew, that his lack of good faith rendered their agreement voidable by her at any time?

The confidential relations continue after marriage. The wife is still presumed to be under the husband's influence. Equity guards with jealous care the rights of a wife who, without competent and independent advice, surrenders the rights secured to her by statute under an agreement with the husband. Mere silence and lack of protest during his lifetime, considering the ages of the parties and the circumstances shown in the case, should not raise any presumption against her. The peril of inaction, if any, was his. His representatives may not invoke her silence against her under such conditions.

Silence alone will not constitute an estoppel, unless it appears that it is known that it will be acted upon to the injury of the other party or is maintained with a deliberate intent to deceive, or to obtain an advantage. The burden of proving the facts to establish it is upon those who claim it. *Hunt* v. *Reilly*, 24 R. I., 68; 10 R. C. L. 692, Sec. 21. The evidence of the plaintiffs does not sustain this burden. The sitting Justice did not so find. It would be mere conjecture for this court to so hold. The mandate of this court must be

> *Appeal sustained. Decree of*
> *sitting Justice reversed.*
> *Bill dismissed with one bill of*
> *costs.*